UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
WILLIAM MCALLISTER,                                    **COMPLAINT**

               Plaintiff,                        Jury Trial Demanded

    -against-

METROPOLITAN TRANSIT AUTHORITY and
the LONG ISLAND RAILROAD,

               Defendants.
------------------------------------------------------------------X

      Plaintiff WILLIAM MCALLISTER, through his attorneys, LEEDS BROWN LAW, P.C., alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

### JURISDICTION AND VENUE

1.     This is a civil action based upon Defendants' violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*; New York State Executive Law, Human Rights Law, § 290 *et seq*, and N.Y.C. Administrative Code §§ 8-107, et seq., as well as any other cause of action that can be inferred from the facts set forth herein.

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343. The supplemental jurisdiction of the Court is invoked over state causes of action, pursuant to 28 U.S.C. § 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the action, including the unlawful employment practices alleged herein, occurred in this district.

4. The jurisdictional prerequisites to this lawsuit have been satisfied. Specifically, Plaintiff filed a charge of discrimination ("1st Charge") with the Equal Employment Opportunity Commission ("EEOC") on February 24, 2012, and was issued a first right to sue letter, received on January 10, 2013. On August 23, 2012, Plaintiff filed a second charge of discrimination ("2nd Charge") with the EEOC, alleging retaliation based upon the 1st Charge. Plaintiff commenced this action within ninety days (90) of receipt of the first right to sue letter, and Plaintiff is currently awaiting receipt of a right to sue letter in relation to the 2nd Charge.

5. Simultaneously with the commencement of this action, a copy of this complaint is being served on the New York City Commission on Human Rights and the Office of the Corporate Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

6. Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

7. Plaintiff, William McAllister ("Plaintiff") is a current employee of the Long Island Railroad. At all times relevant to this action, Plaintiff was a resident of Suffolk County, New York. At all relevant times, Plaintiff was an "employee" as defined by all relevant statutes.

8. Defendant, the Metropolitan Transportation Authority ("MTA"), is a public benefit corporation chartered by the New York State Legislature. Defendant purposefully engages in business in the State of New York, operating a vast transportation network throughout the state, which includes the Long Island Railroad.

9. Defendant, the Long Island Railroad ("LIRR"), is a commuter rail system serving the length of Long Island, New York, which is publically owned by the MTA.

10. At all relevant times, the MTA and the LIRR are referred to together as "Defendants".

11. At all relevant times, Defendants employed over 30 employees and was an employer as defined by all relevant statutes.

## FACTUAL BACKGROUND

12. Plaintiff is disabled within the meaning of the law. He suffers from a cardiac condition which limits or impairs at least one major life function. Specifically, Plaintiff is unable to engage in strenuous activity, work for extended periods of time without the benefit of periodic rest, be subjected to undue stress, and is sensitive to extreme temperatures.

13. On September 23, 1992, Plaintiff commenced employment as a station appearance maintainer for the LIRR.

14. In or around 2005, Plaintiff was promoted to the position of LIRR crew dispatcher.

15. Prior to suffering from a heart attack on March 18, 2011, Plaintiff maintained a good employment record, and had no disciplinary actions taken against him.

16. On March 18, 2011, Plaintiff suffered a heart attack while on the job and was on medical leave for approximately 7 weeks. Thus, Defendants were on notice of Plaintiff's disability.

17. After Plaintiff suffered a heart attack, Plaintiff became subjected to increased scrutiny and discipline on account of his disability.

18. On or around March 2011, Defendants sent Plaintiff a trial letter containing false and baseless accusations of sleeping on the job.

19. In response to Defendants' letter, Therese McAllister, Plaintiff's wife, made a request for reasonable accommodations, on behalf of her ailing husband, to LIRR Manager of Crew Management Services, Eric Lomot ("Lomot"). Specifically, she asked that Defendants not send any further notices to the house in the immediate future due to medical orders that Plaintiff avoid stress at his home.

20. Notwithstanding Lomot's verbal assurances that no further notices would be sent, Plaintiff received another notice at his home shortly thereafter. Later that day, Lomot and LIRR Manager of Transportation, Vincent Capasano ("Capasano"), informed that if Plaintiff did not

sign a waiver agreeing to work 4 days without pay for the alleged sleeping incident, he would be terminated. Plaintiff signed the waiver.

21. On May 3, 2011, Plaintiff returned to work after his heart attack. After returning, Lomot falsely accused Plaintiff of sleeping on the job, misusing an email form, dishonesty, and conduct unbecoming of an employee.

22. On November 3, 2011, LIRR Assistant Supervisor and Plaintiff's direct manager, Debbie Singer ("Singer"), informed Plaintiff that Lomot was "out to get him" and that she strongly disagreed with the charges against him.

23. On November 7, 2011, Defendant conducted a disciplinary hearing ("Disciplinary Hearing"), based on the aforesaid false charges of dishonesty, sleeping on the job, and conduct unbecoming of an employee.

24. At the Disciplinary Hearing, Defendants refused Plaintiff the opportunity to present a defense, call witnesses, or submit statements on his behalf.

25. At the conclusion of the Disciplinary Hearing, Defendants demoted Plaintiff to the position of station cleaner, which resulted in a lower rate of pay and lost overtime opportunities. More so, the position of station cleaner is far more labor intensive than that of crew dispatcher.

26. After the demotion, Plaintiff was instructed to report to the LIRR's medical office within 48 hours in order to be cleared for employment.

27. After visiting the LIRR doctor, Plaintiff was informed that he must obtain medical clearance to return to work. Within a week, Plaintiff's doctors declared him fit for duty.

28. Even though he was medically cleared, Plaintiff was not allowed to return to work. As a result, Plaintiff was prevented from returning to work for about 7 weeks, and only received approximately 8 days compensation during this time.

29. Plaintiff engaged in a protected activity in November 2011 by complaining to MTA Inspector General, Barry Kluger ("Kluger"), that he was being discriminated against on account of his disability. During this same month, Plaintiff made similar complaints of disability discrimination to Singer, the LIRR's Employee Assistance Program Representative, Pat Viviano ("Viviano"), and also to his union representative, John Murry ("Murray").

30. On December 20, 2011, Plaintiff was permitted to return to work on restricted duty only.

31. On February 24, 2012, Plaintiff filed a complaint of discrimination and retaliation with the New York State Division of Human Rights ("DHR"), and was assigned case number 10153595 (1st DHR Complaint").

6

32. The 1st DHR Complaint alleged that Defendants had discriminated against Plaintiff on account of his disability, and retaliated against him for his complaints concerning same.

33. After the 1st DHR Complaint was filed, and on around December 2012, Plaintiff was reassigned to the position of usher, and was required to make train announcements from a booth located at Jamaica Station ("Booth") that had an inoperable air conditioning unit. As a result, the temperature was dangerously high whenever the weather was warm.

34. At the onset of the warm weather season in 2012, Plaintiff had repeatedly complained to the LIRR's staff help desk about the dangerously high temperatures within the Booth. Despite Plaintiff's repeated complaints, Defendants failed and refused to fix the air conditioning unit; and/or transfer Plaintiff to a booth with an operable air conditioning unit.

35. On May 25, 2012, Plaintiff was found unconscious in the Booth due to exhaustion and overheating; and was taken by ambulance to the hospital and examined. As Plaintiff was being loaded into the ambulance, LIRR Station Manager, Sal Coppola ("Coppola"), took his information relating to this event for the purpose of submitting an accident report.

36. At the time Plaintiff was found unconscious in the Booth, the temperature in the Booth was dangerously high.

37. Upon information and belief, air conditioning units inside other booths not occupied by disabled individuals were maintained and kept in good repair by Defendants. Defendants'

refusal to fix the air conditioning unit and/or transfer Plaintiff to a booth with an operable one was done in retaliation on account of Plaintiff's complaints of discrimination.

38. The dangerously high temperature within the Booth had exacerbated his pre-existing heart condition, causing him to lose consciousness. Plaintiff was unable to return to work until he was cleared to do so by his cardiologist. Plaintiff missed approximately 2 months from work in order to recover and did not receive injury pay during this time.

39. Plaintiff then contacted LIRR Lead Transportation Manager, Joe Navarro ("Navarro"), who told him he was not receiving injury pay because a report of the accident was lost.

40. On or around June 2012, the accident report was wrongfully confiscated by Capasano. Upon information and belief, while acting in discharge of his official duties, Capasano confiscated the original accident report in further retaliation of Plaintiff for filing the 1st DHR Complaint.

41. On August 10, 2012, Plaintiff was served with a Notice of Trial (the "Notice"), directing his appearance on August 13, 2012, to answer for a purported violation of the LIRR's Absence Control Policy (the "Policy"). Plaintiff was falsely accused of exceeding the number of absences permitted by the Policy.

42. Plaintiff was not permitted to return to work following his hospitalization on May 25, 2012, despite the fact that he was ready, willing, and medically capable of doing so with a grant of a reasonable accommodation. On August 17, 2012, Plaintiff met with a doctor hired by

Defendants. After conferring with an unknown colleague, Defendants' doctor informed Plaintiff, in sum and substance, that he could not return to work regardless of diagnosis or examination, as a HIPAA authorization in relation to his cardiologist's medical reports had been lost.

43. On August 23, 2011, Plaintiff filed a second complaint with the DHR, and was assigned case number 10157016 (2nd DHR Complaint).

44. The 2nd DHR Complaint alleged that Defendants had discriminated against Plaintiff on the basis of disability, and retaliated against him for his complaints about same.

45. Plaintiff was not compensated between May 25, 2012 and June 21, 2012 until the 3rd week of November.

46. On October 7, 2012, Plaintiff returned to work. Upon his return, and continuing to date, Plaintiff has been placed on restricted duty status. Plaintiff's restricted duty status limits his ability to obtain jobs that are commensurate with his seniority, and remains ineligible for high-paying work and reliable overtime opportunities.

47. On or around October 7, 2012, and continuing throughout the cold weather season, Defendants placed Plaintiff in a work area with an exposed ceiling, causing him to be exposed to cold temperatures and diesel fumes.

48. By virtue of the foregoing, Plaintiff suffers damages including, *inter alia*, lost pay, front pay, back pay, emotional damages, personal humiliation, embarrassment, mental anguish, damages to his reputation, character, and standing in the community; and other special damages in an amount to be determined at a later date.

## AS AND FOR A FIRST AND SECOND CAUSE OF ACTION AGAINST DEFENDANTS
*(For violations of the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq.)*
*Disability Discrimination and Retaliation*

49. Plaintiff repeats and re-alleges each and every allegation contained herein.

50. Plaintiff suffers from a heart condition and is disabled within the meaning of the law. Further, Plaintiff has been discriminated against on account of same.

51. Plaintiff was demoted from a higher position he was qualified to hold to a lesser position on account of his disability and in retaliation.

52. The circumstances surrounding Plaintiff's demotion give rise to an inference of disability discrimination.

53. Plaintiff engaged in protected activities by complaining to Defendants about discrimination on account of his disability, and by filing formal complaints of discrimination with the New York State Division of Human Rights.

54. A causal connection exists between the aforesaid adverse employment actions and Plaintiff's protected activities.

55. As a result of the discrimination and retaliation, Plaintiff suffers damages including, *inter alia*, lost pay, front pay, back pay, emotional damages, personal humiliation, embarrassment, mental anguish, damages to his reputation, character, and standing in the community; and other special damages in an amount to be determined at a later date.

### AS AND FOR A THIRD AND FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
*(For violations of the New York State Executive Law, Human Rights Law, § 290 et seq.)*
*Disability Discrimination and Retaliation*

56. Plaintiff repeats and re-alleges each and every allegation contained herein.

57. Plaintiff suffers from a heart condition and is disabled within the meaning of the law. Further, Plaintiff has been discriminated against on account of same.

58. Plaintiff was demoted from a higher position he was qualified to hold to a lesser position on account of his disability and in retaliation.

59. The circumstances surrounding Plaintiff's demotion give rise to an inference of disability discrimination.

60. Plaintiff engaged in protected activities by complaining to Defendants about discrimination on account of his disability, and by filing formal complaints of discrimination with the New York State Division of Human Rights.

61. A causal connection exists between the aforesaid adverse employment actions and Plaintiff's protected activities.

62. As a result of the discrimination and retaliation, Plaintiff suffers damages including, *inter alia*; lost pay, front pay, back pay, emotional damages, personal humiliation, embarrassment, mental anguish, damages to his reputation, character, and standing in the community; and other special damages in an amount to be determined at a later date.

**AS AND FOR A FIFTH AND SIXTH
CAUSE OF ACTION AGAINST DEFENDANTS**
*(For violations of N.Y.C. Administrative Code §§ 8-107, et seq.)*
*Disability Discrimination*

63. Plaintiff repeats and re-alleges each and every allegation contained herein.

64. Plaintiff suffers from a heart condition and is disabled within the meaning of the law. Further, Plaintiff has been discriminated against on account of same.

65. Plaintiff was demoted from a higher position he was qualified to hold to a lesser position on account of his disability and in retaliation.

66. The circumstances surrounding Plaintiff's demotion give rise to an inference of disability discrimination.

67. Plaintiff engaged in protected activities by complaining to Defendants about discrimination on account of his disability, and by filing formal complaints of discrimination with the New York State Division of Human Rights.

68. A causal connection exists between the aforesaid adverse employment actions and Plaintiff's protected activities.

69. As a result of the discrimination and retaliation, Plaintiff suffers damages including, *inter alia*; lost pay, front pay, back pay, emotional damages, personal humiliation, embarrassment, mental anguish, damages to his reputation, character, and standing in the community; and other special damages in an amount to be determined at a later date.

## **DEMAND FOR A JURY TRIAL**

70. Plaintiff demands a trial by jury of all issues and claims in this action.

## **PRAYER FOR RELIEF AGAINST DEFENDANTS**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1. Demand a jury trial on these issues to determine liability and damages;
2. A judgment declaring that the practices complained of herein are unlawful;

3. All damages which Plaintiff has sustained as a result of Defendants' conduct, including, without limitation, back pay, front pay, general and special damages for lost compensation and job benefits he would have received but for Defendants' improper practices;

4. An award to Plaintiff of compensatory damages, including but not limited to damages for emotional pain and suffering where appropriate;

5. Awarding the Plaintiff compensatory damages including, *inter alia*; lost pay, front pay, back pay, emotional damages, personal humiliation, embarrassment, mental anguish, damages to his reputation, character, and standing in the community; and other special damages in an amount to be determined at a later date.

6. Exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless, and/or intentional acts where appropriate and permitted by law;

7. Awarding Plaintiff costs and disbursements incurred in connection with this action together with interest at the statutory rate;

8. Awarding Plaintiff reasonable attorneys' fees, expert witness fees, and other costs;

9. Pre-judgment and post-judgment interest, as provided by law; and

10. Granting Plaintiff other and further relief as this Court finds necessary and proper.

Carle Place, New York

                              Respectfully submitted,

                              **LEEDS BROWN LAW, PC**
                              *Attorneys for Plaintiff*
                              One Old Country Road, Suite 347
                              Carle Place, New York 11530
                              (516) 248-5550

By:          _____
                              David H. Rosenberg, Esq.
                                  *For the firm*