| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | FOR ONLINE PUBLICATION ONLY |

| | |
|---|---|
| WILLIAM MCALLISTER,<br>                            Plaintiff,<br>- versus -<br>METROPOLITAN TRANSIT AUTHORITY<br>and the LONG ISLAND RAILROAD,<br>                            Defendants. | MEMORANDUM<br>AND ORDER<br>13-CV-2060 (JG) |

A P P E A R A N C E S :

        LEEDS BROWN LAW, P.C.
        One Old Country Road, Ste 347
        Carle Place, NY 11514
By:   David Rosenberg
        *Attorney for Plaintiff*

        THE LONG ISLAND RAIL ROAD COMPANY
        LAW DEPARTMENT
        93-02 Sutphin Blvd
        Jamaica, New York 11435
By:   Kevin McCaffrey
        *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

        William McAllister commenced this action against Metropolitan Transit Authority ("MTA")[1] and the Long Island Railroad ("LIRR") alleging violations of the American With Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the New York State Human Rights Law § 290 *et seq.* ("NYSHRL"), and the New York City Administrative Code § 8-107, *et seq.* ("NYCHRL"). LIRR now moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and Rule 12(b)(6). For the reasons set forth below, the motion is denied.

---

[1] In his opposition to the motion, McAllister has withdrawn all claims against the MTA. Mem. of Law in Opp. Fn. 1. He has also withdrawn the state law claims alleged in the first of his two administrative complaints, one filed on February 24, 2012 and amended on July 9, 2012 – both assigned case number 10153593. Mem. of Law in Opp. pg. 1. Defendants' motion to dismiss these claims on election-of-remedy grounds is therefore moot.

BACKGROUND

The facts set forth here are drawn from the plaintiff's complaint, and are assumed to be true for the purposes of this motion.

McAllister began his employment with the LIRR on September 23, 1992 as a station appearance maintainer. Compl. ¶ 13. In 2005 he was promoted to a position as a crew dispatcher. *Id.* ¶ 14. On March 18, 2011, McAllister suffered a heart attack while on the job and was on medical leave for approximately seven weeks. *Id.* ¶ 16. Prior to his heart attack he had a good employment record and no disciplinary actions had been taken against him. *Id.* ¶ 15. However, after his heart attack, McAllister was subjected to increased scrutiny and discipline. *Id.* ¶17.

In March 2011, while McAllister was on medical leave, the LIRR sent him a letter accusing him of sleeping on the job. *Id.* ¶18. In response to the letter, McAllister's wife, Therese McAllister, sent a request to his supervisor, Eric Lomot, that no further notices be sent due to medical orders that McAllister avoid stress in the home. *Id.* ¶ 19. Despite this request, Lomot and LIRR Manager of Transportation, Vincent Capasano, informed McAllister that if he did not sign a waiver agreeing to work four days without pay for the sleeping incident, he would be terminated. McAllister signed the waiver. *Id.* ¶ 20.

McAllister returned to work on May 3, 2011. After his return, Lomot accused McAllister of sleeping on the job, misusing an email form, dishonesty, and conduct unbecoming of an employee. *Id.* ¶ 21. On November 3, 2011 supervisor Debbie Singer told McAllister that Lomot was "out to get him," and that she disagreed with the charges against him. *Id.* ¶ 22. A disciplinary hearing was held on November 7, 2011, which resulted in the LIRR demoting McAllister to the position of station cleaner. *Id.* ¶¶ 23, 25. This demotion resulted in a lower

pay rate and lost overtime opportunities. *Id.* ¶ 25. It was also more labor intensive than that of crew dispatcher. *Id.*

After McAllister's demotion the LIRR refused to medically clear him for work even though his doctors declared him fit for duty. *Id.* ¶¶ 26-27. It prevented him from returning to work for seven weeks and compensated him for only approximately 8 days during this period. *Id.* ¶ 28.

In November 2011 McAllister complained to MTA Inspector General Barry Kluger that he was being discriminated against because of his disability. *Id.* ¶ 29. During that month he also made similar complaints of disability discrimination to Singer, Pat Viviano, the LIRR's Employee Assistance Program Representative, and John Murry, his union representative. *Id.* ¶ 29. McAllister was permitted to return to work on restricted duty on December 20, 2011. *Id.* ¶ 30.

On February 24, 2012, McAllister filed a complaint of discrimination and retaliation with the New York State Division of Human Rights ("DHR"), which was assigned case number 1015395 (the "First DHR Complaint"). *Id.* ¶ 31. McAllister's First DHR Complaint alleged that defendant had discriminated again him on account of his disability, and retaliated against him for his complaints concerning the same. *Id.* ¶ 32.

After this complaint was filed, McAllister was reassigned to a position as an usher and transferred to the information booth at Jamaica Station. *Id.* at 33. The air conditioning unit in the booth was inoperable and McAllister complained to the LIRR about the dangerously high temperatures. Defendant did not fix the air conditioning unit or transfer McAllister to a booth with an operable unit. *Id.* ¶34. The high temperature within the booth exacerbated McAllister's

pre-existing heart condition, causing him to lose consciousness on May 25, 2012. *Id.* ¶ 35. He was unable to return to work for approximately two months. *Id.* ¶ 38.

The LIRR did not permit McAllister to return to work following his hospitalization, which resulted in a loss of wages. *Id.* ¶ 44. McAllister was informed that he did not receive injury pay during this time because the report of the accident was lost. *Id.* ¶ 39. McAllister alleges that the accident report was confiscated by Capasano in further retaliation for his First DHR Complaint. *Id.* ¶ 40. On July 9, 2012, McAllister amended that complaint to add allegations related to the incidence in the booth and the confiscated accident report.

On August 10, 2012, McAllister received a notice that he had violated the LIRR Absence Control Policy; he was accused of exceeding the number of absences permitted by the Policy. *Id.* ¶ 41.

McAllister filed his second complaint with the DHR on August 23, 2012 (the "Second DHR Complaint"), and it was assigned case number 10157016. *Id.* ¶ 43. The Second DHR Complaint alleged that the defendants had discriminated against McAllister on the basis of disability, and retaliated against him for filing the complaint about such discrimination. *Id.* ¶ 44.

McAllister returned to work on restricted duty on October 7, 2012. He was placed in a work area with an exposed ceiling, causing him to be exposed to cold temperatures and diesel fumes. *Id.* ¶ 47. His restricted duty limits his ability to obtain jobs that are commensurate with his seniority, and opportunities for high-paying work and overtime. *Id.* ¶ 46.

DISCUSSION

A.   *The Standard of Review Under Rule 12(b)(6)*

Under the Federal Rules of Civil Procedure, a complaint "must contain . . . a short

and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that does not do so will be dismissed for failing to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010).

For decades, the oft-cited standard for assessing the sufficiency of a complaint was the Supreme Court's statement of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), however, the Supreme Court "retired the *Conley* no-set-of-facts test," *id.* at 670, in place of a new standard for addressing the sufficiency of a complaint under Rule 8(a).

Under the new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570.) This standard requires factual allegations that, taken as true, demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If a complaint allows a court to infer no more than "the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must offer more than "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of

'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

In assessing whether a complaint meets the plausibility standard, a court should first identify allegations that "are no more than conclusions" and therefore "are not entitled to the assumption of truth." *Id.* at 679; *see also Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010). Second, a court should assume that any remaining well-pleaded allegations are true and "then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S at 679; *see also Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 824 (2010).

B.   *The Timeliness of McAllister's Claims*

The LIRR contends that McAllister's allegations of discrimination and retaliation occurring before July 9, 2012 are time barred.  In order to be timely, a claim under the ADA must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1) (specifying that a Title VII action must be brought within 90 days of the claimant's notification of her right to sue); *id.* § 12117(a) (applying the Title VII limitations period to claims brought under the ADA). There is a presumption that a notice provided by a government agency was mailed on the date shown on the notice. *See Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 526 (2d Cir. 1996) (citing *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 148 & n. 1 (1984)).  There is also a presumption that a mailed document is received three days after its mailing. *See id.* at 525.  The initial presumption is not dispositive, however, "[i]f a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed

later than its typewritten date or that it took longer than three days to reach her by mail." *Id.* at 526.

Defendant argues that on September 25, 2012 the EEOC issued a right-to-sue letter regarding McAllister's First DHR Complaint filed on February 25, 2012 and amended on July 9, 2012. However, McAllister filed the instant complaint on April 9, 2013, more than 90 days after it is presumed that he received the EEOC letter. McAllister argues that his complaint is timely because neither plaintiff nor his counsel received the September 25, 2012 right-to-sue letter within the presumed time frame and because of this the EEOC sent a letter stating January 10, 2013 is the start of plaintiff's 90 days to file a lawsuit. The issue raised by the motion is whether McAllister's 90-day period within which to file suit began on September 25, 2012 or on January 10, 2013.

Numerous courts within the Circuit "have held that the principle in Rule 12(b)(6) motions that a pleading's factual allegations must be taken as true applies to allegations that a plaintiff did not receive his EEOC letter within three days after the EEOC mailed it." *Newell v. N.Y. City Dep't of Transp.,* 2010 WL 1936226, at *2 (E.D.N.Y. May 12, 2010); *see also J.D. Carpenter v. City of New York,* 2010 WL 2680427, at *2 (E.D.N.Y. June 30, 2010); *Spruill v. NYC Health & Hosp.*, 2007 WL 2456960, at *5 (S.D.N.Y. Aug. 23, 2007), *aff'd,* 367 Fed. Appx. 269 (2d Cir. 2010).

McAllister alleges that neither he nor his attorney received his right-to-sue letter dated September 25, 2012. McAllister's attorney informed the EEOC of this and the EEOC responded by sending another right-to-sue letter and stating his 90-day period began January 10, 2013. Mem of Law in Opp. at 9. Taking these allegations as true, which the Court is required to do in a Rule 12(b)(6) motion, the Court will not dismiss plaintiff"s federal claims on the grounds

7

that this action was not commenced within 90 days of plaintiff's receipt of the September 25, 2012 right-to-sue letter.

Defendant argues that McAllister's sworn statement (McAllister Dec. ¶¶ 6-8) that he did not receive the right-to-sue letter until January 10, 2013 is insufficient to overcome the presumption that he received the September 25, 2013 letter within three days. McAllister has submitted a sworn declaration stating that "[a]t no point did I ever personally receive the Dismissal from the EEOC." McAllister Dec. ¶ 6. As discussed above, that factual allegation must be accepted as true. It is sufficient to rebut the presumption of receipt and to create a question of fact as to when the 90–day limitations period was triggered. [2] *See Sherlock,* 84 F.3d at 526. This issue of fact cannot properly be decided in the context of a Rule 12(b)(6) motion to dismiss. *See Comrie v. Bronx Lebanon Hosp.,* 133 F.3d 906, *2 (2d Cir. Jan. 27, 1998) (unpublished) (reversing district court's dismissal of discrimination claims as untimely on a Rule 12(b)(6) motion, and finding that plaintiff "sufficiently rebutted the three-day presumption" by submitting an affidavit specifying the later date on which she received the right-to-sue letter); *Smith v. Chase Manhattan Bank,* 1998 WL 642930, at *4 (S.D.N.Y. Sept. 18, 1998) ("Smith's sworn affidavit states that he did not receive the EEOC's letter because the agency sent it to an incorrect address, notwithstanding the fact that Smith had timely notified the EEOC of the change in his address prior to the date on which the letter was drafted . . . plaintiff has sufficiently rebutted the presumption of receipt, thereby creating an issue of fact as to when the 90 day limitations period began to run in his case.").

---

[2] Defendants filed their reply memorandum on August 9, 2013. On August 13, 2013, they filed a motion to amend their motion to include a declaration from Holly Woodyard. ECF. No. 15. In the declaration, Woodyard states that she personally mailed the right-to-sue letter to McAllister on September 25, 2012. While Woodyard's declaration may prove fatal to McAllister's timeliness argument at the summary judgment stage, *see Isaacson v. N.Y. Organ Donor Network*, 405 Fed. Appx. 552, 553 (2d Cir. 2011), there is no authority for me to go beyond the pleadings at this stage.

Accepting McAllister's allegation as true, his time to file suit began to run when his right-to-sue letter was received by his attorney on January 10, 2013. Therefore, McAllister was required to file his complaint within 90 days thereafter, or by Wednesday, April 10, 2013. Plaintiff filed the instant action on April 9, 2013. Defendant's motion to dismiss McAllister's claims as time-barred is denied.[3]

  C. *Sufficiency of Discrimination and Retaliation Claims*

   *1. McAllister's Claims of Discrimination*

The ADA prohibits discrimination against any "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a)[4]. To state a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that (1) his employer is subject to the anti-discrimination provisions of the ADA; (2) he is disabled within the meaning of the ADA or perceived to be disabled by his employer; (3) he is otherwise qualified to perform the duties of his job; and (4) an adverse employment action was taken against him because of his disability. *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001) (citations omitted).

ADA discrimination claims are subject (at the summary judgment stage) to the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v.*

---

[3] Additionally, McAllister has attached correspondence from the EEOC dated January 24, 2013 stating that "[s]ince [plaintiff's attorney] never received a copy of the dismissal and notice of rights that was originally mailed on September 24, 2012, the dismissal and notice of rights that was received on January 10, 2013, is the start of your 90 days to file a lawsuit in court." McAllister Ex. C. The LIRR disputes the relevance of this fact, a dispute I need not resolve at this stage.

[4] The NYSHRL "accords greater disability protection" than federal law and the NYCHRL "provides even broader protections still." *Vig v. New York Hairspray Co., L.P.*, 885 N.Y.S.2d 74, 77 (2009) (citing *Reilly v. Revlon, Inc.,* 620 F.Supp.2d 524, 541 (S.D.N.Y. 2009)); *Giordano v. City of New York*, 274 F.3d 740, 753 (2d Cir. 2001); *see also Margherita v. Fedex Express*, 11-cv-4859 (NG), 2013 WL 452527, at *2 (noting that claims under the NYCHRL must be reviewed "independently from and more liberally than federal or state discrimination claims" (citations and internal quotation marks omitted)). The parties agree that for the purposes of this case, the NYSHRL or NYCHRL do not require a different outcome than federal law.

*Green*, 411 U.S. 792 (1973). However, a plaintiff need not plead all the facts necessary to establish a prima facie case. He need only satisfy Fed. R. Civ. P. 8 by making "a short and plain statement of claim" illustrating that he is entitled to relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Twombly*, 550 U.S. at 547 (explicitly affirming the *Swierkiewicz* pleading standard for employment discrimination cases).

The parties do not dispute that the LIRR is subject to the ADA, that McAllister is disabled and is otherwise qualified to perform the essential functions of his job. However, the LIRR contends that McAllister has failed to allege that he suffered any adverse employment action. Significantly, the LIRR does not address McAllister's claims of adverse employment action that occurred prior July 9, 2012, such as his demotion, because it believes them to be time-barred and therefore not a basis for relief. Reply Mot. at pg. 6. However, because I find these claims are not time-barred, I consider them in my analysis.[5]

"Employment actions that have been deemed sufficiently disadvantageous to constitute an adverse employment action include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Williams v. R.H. Donnelly Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (citation omitted). These examples demonstrate that to be "materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citation omitted).

McAllister's claims of adverse employment action include: (1) demotion to the position of station cleaner, resulting in less pay and lost overtime opportunities (Compl. ¶25); (2)

---

[5] At oral argument counsel for the LIRR conceded that the sufficiency challenge to the complaint fails if the LIRR's argument on timeliness does not prevail.

10

placement on restricted duty status, which limited his ability to obtain jobs that are commensurate with his seniority and his eligibility for high-paying work and reliable overtime opportunities (*id.* ¶46); and (3) unsafe work conditions (*id.* ¶¶ 33-37).

Accepting McAllister's claim as true, he has sufficiently pled adverse employment actions. His demotion and restricted duty status resulted in a materially adverse changes in his work conditions that were more than mere inconveniences or changes in job responsibilities. These changes resulted in decreased wages, loss of overtime and limitations in opportunity for professional growth. *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003) ("An 'adverse employment action' . . . include[s] termination of employment, a demotion evidenced by a decrease in wage or salary . . .") (citation omitted); *see also Humphrey v. County of Nassau*, 06-cv-3682 (JFB), 2009 WL 875534,* 5 (E.D.N.Y. March 30, 2009) (finding that transfer to a position which may negatively affect opportunities for professional grown constitute adverse employment action.); *see also de la Cruz v. New York City Human Resources Admin. Dep't of Social Servs*., 82 F.3d 16, 21 (2d Cir. 1996) (transfer to "less prestigious" unit of social services department with reduced opportunities for professional growth was adverse employment action).

McAllister also claims that he was transferred to the Jamaica Station booth, which had an inoperable air conditioning unit. He alleges that "air conditioning units inside other booths not occupied by disabled individuals were maintained and kept in good repair by Defendant[]," Compl. ¶ 37, and that the LIRR refused to fix the air conditioning unit or to transfer him to a booth with an operable unit. *Id.* ¶ 34. This allegedly resulted in McAllister working in extreme temperatures despite his heart condition, which led to him suffering heat exhaustion and being hospitalized. A transfer to a poor work location does not always constitute adverse employment action (*see, e.g., Crawford-Bey v. New York & Presbyterian Hosp.*, 08-cv-

5454 (RJS), 2011 WL 4530193 (S.D.N.Y. Sept. 30, 2011) (no adverse employment action where plaintiff was assigned to "a small, windowless office" "without [access] to proper ventilation, lighting and with a very offensive smelling bathroom"); however, exposing a worker to dangerous or extreme work conditions may. *See Edwards v. Metro–North Commuter R.R. Co.,* No. 04-cv-430 (JBA), 2006 WL 2790402, at *5 (D.Conn. Sept. 27, 2006) (holding that employer's failure to provide employee with certain protective equipment could be an adverse employment action because it exposed employee to "potentially unreasonably dangerous working conditions"); *see also O'Neal v. City of Chicago,* 392 F.3d 909, 911 (7th Cir. 2004) (adverse employment action is shown where "employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, *unsafe, unhealthful,* or otherwise significantly negative alteration in her workplace environment") (emphasis added); *Patrolmen's Benevolent Ass'n v. City of N.Y.,* 310 F.3d 43, 51–52 (2d Cir. 2002) (transfer of plaintiff police officer to a different precinct where, *inter alia,* he feared for his safety, constituted an adverse employment action for Title VII discrimination purposes).

In sum, McAllister has sufficiently alleged that he suffered adverse employment actions.

2. *McAllister's Claims of Retaliation*

It is unlawful for an employer to retaliate by discriminating against an employee because the employee engaged in protected activity, that is, "has opposed any practice made an unlawful practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C § 2000e-3(a).

"To establish a prima facie case of retaliation, plaintiff must show that (1) he engaged in an activity protected by the ADA; (2) [defendant] was aware of this activity; (3) he suffered an adverse employment action; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Infantolino v. Joint Indus. Bd. of Elec. Indus,* 582 F.Supp.2d 351, 357 (E.D.N.Y. 2008). At this stage, plaintiff need not establish a prima facie case, but must nonetheless "allege facts that state a plausible retaliation claim." *Jackson v. N.Y. State Dep't of Labor,* 709 F.Supp.2d 218, 228 (S.D.N.Y. 2010).

The LIRR does not dispute that McAllister's reports of discrimination to LIRR employees and the filing of his First and Second DHR Complaints constituted protected activity of which it was aware. The LIRR argues that McAllister has not alleged that he suffered an adverse employment action necessary to state a claim for retaliation. It further contends that even if he has, he has failed to allege a causal connection between his protected activity and the adverse employment action.

For a retaliation claim, an adverse employment action need not impact the terms and conditions of the plaintiff's employment. Instead, the plaintiff must show that he was subjected to actions by his employer that might "dissuade a reasonable worker from making or supporting a charge of discrimination." *See Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 57 (2006) (noting that the adverse employment action requirement is more relaxed in the retaliation context, as a plaintiff need only show that the challenged action was "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."). Here, McAllister has alleged that he was placed in a work environment

13

dangerous to his health[6], demoted, and denied overtime opportunities. These allegations sufficiently allege adverse employment action.

McAllister has also sufficiently alleged a causal connection between the adverse employment actions he suffered and his protected activity. "[A] plaintiff can indirectly establish a causal connection to support a [] retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110–11 (2d Cir. 2010) (quoting *Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty.,* 252 F.3d 545, 554 (2d Cir. 2001)); *see also Feingold v. New York,* 366 F.3d 138, 156 (2d Cir. 2004) ("[T]he requirement that [plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two."); *Treglia v. Town of Manlius,* 313 F.3d 713, 720 (2d Cir. 2002) ("We have held that a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation."). There is no bright line rule as to how long after a plaintiff has engaged in the protected activity the adverse action must have occurred to benefit from the inference, but generally courts measure the time in months. *See, e.g. Gorzynski,* 596 F.3d at 110–11 ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship.").

Within three months of McAllister's First DHR Complaint he was transferred to the Jamaica Station booth where he suffered heat exhaustion (Compl. ¶¶ 31, 35) despite the

---

[6] I also note that the ADA's prohibition against retaliation protects an individual when he seeks a "reasonable accommodation" for his disability. *Sussle v. Sirina Prot. Sys. Corp.,* 269 F.Supp.2d 285, 313 (S.D.N.Y. 2003) (citing *Weixel v. Bd. of Educ. of City of New York,* 287 F.3d 138, 148 (2d Cir. 2002)).

LIRR's ability to fix the air conditioning unit or transfer McAllister to a booth with an operable unit.  *See* Compl. ¶ 37.  Further, McAllister was unable to return to work after this accident but did not receive injury pay because the accident report was confiscated.  Compl. ¶ 38.  The temporal proximity between McAllister's First DHR Complaint and his being transferred to an allegedly dangerous work condition and the LIRR's denial of injury pay sufficiently alleges a causal nexus.  Thus, McAllister has sufficiently alleged both that he suffered adverse employment actions and that there was a causal nexus between his protected activity and those actions.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is denied.  The denial of the defendant's timeliness argument is of course without prejudice to the renewal of that argument on a motion for summary judgment.

So ordered.

John Gleeson, U.S.D.J.

Dated: August 26, 2013
      Brooklyn, New York